## COUNTY OF CASS v. GILLETT.

1. The court adheres to its rulings in *County of Henry* v. *Nicolay* (95 U. S. 619), that the provisions of sect. 14, art. 11, of the Constitution adopted by Missouri in 1865, which require the assent of two-thirds of the qualified voters of a county to a subscription on its behalf for stock in a corporation, do not apply to cases where such subscription is made for stock in a railroad company pursuant to the power conferred by its charter granted prior to the adoption of that Constitution, notwithstanding the contemplated road is a branch road, the construction of which, although authorized by such charter, is undertaken as an independent enterprise under the act of March 21, 1868, entitled "An Act to aid in the building of branch railroads in the State of Missouri."

2. Where the company authorized a committee to take charge of the construction of such road, and solicit subscriptions in the name of the company to the use of such branch, and it subsequently assigned a portion of its franchises to another company, — *Held*, that the branch being thus organized and invested with the powers and privileges conferred by the charter of the company to enable it to prosecute the work, a subscription by a county through which such road passed is not rendered invalid by the fact that when made such partial assignment by the company of its franchises had taken place.

3. Where the county court made an order to subscribe to the capital stock of the company for the use of one of its branches, and issued county bonds which were accepted by the construction committee, in payment, — *Held*, that an actual manual subscription on the books of the company was not necessary to entitle the county to the stock, or to bind it as a subscriber thereto.

4. A *bona fide* purchaser of negotiable securities before their maturity is not affected with constructive notice of a suit respecting them. *County of Warren* v. *Marcy* (97 U. S. 107) cited on this point and approved.

ERROR to the Circuit Court of the United States for the Western District of Missouri.

This action was brought against the county of Cass, Missouri, on certain interest coupons or warrants detached from bonds purporting to be issued by the county court of that county. The following is a copy of one of the bonds and of a coupon thereto annexed: —

"UNITED STATES OF AMERICA.

"$1,000.]                                        [County Bond No. 66

"COUNTY OF CASS, STATE OF MISSOURI.

"*Interest ten per cent per annum, payable on the first days of August and February, in New York.*

"Know all men by these presents, that the county of Cass, in the State of Missouri, acknowledges itself indebted and firmly

bound to the Tebo and Neosho Railroad Company, to the use and benefit and in the name of the Clinton and Kansas City Branch of the Tebo and Neosho Railroad, in the sum of $1,000, which sum the said county, for value received, hereby promises to pay to the Tebo and Neosho Railroad Company, or bearer, to aid in building the said branch railroad, at the National Park Bank, in the city of New York, in the State of New York, on the first day of February, A.D. 1891, redeemable, however, at the option of the county court of said county at any time after the lapse of five years after the date hereof, together with interest thereon from the first day of February, 1871, until paid, at the rate of ten per centum per annum, which interest shall be payable semi-annually, on the first days of August and February of each year, on presentation and delivery at said bank of the coupons of interest hereto severally attached. This bond is issued under and in pursuance of an order of the county court of the county of Cass, in the State of Missouri, and in pursuance of and by authority of an act of the General Assembly of the State of Missouri, entitled 'An Act to incorporate the Tebo and Neosho Railroad Company,' approved Jan. 16, 1860, and of an act of the General Assembly of the State of Missouri, entitled 'An Act to aid in the building of branch railroads in the State of Missouri,' approved March 21, A.D. 1868. In testimony whereof, the said county of Cass has executed this bond, by the presiding justice of the county court of Cass County, under the order of said court, signing his name hereto, and by the clerk of said court, under the order thereof, attesting the same and affixing the seal of said court, at the town of Harrisonville, county of Cass, aforesaid, this first day of February, A.D. 1871.

"JEHIEL C. STEVENSON,
"*Presiding Justice of the County Court of Cass County, Missouri.*
"Attest:

[SEAL OF CASS COUNTY COURT.]          "C. H. DORE,
"*Clerk of the County Court of Cass County, Missouri.*

"$50.] *Harrisonville, Cass County, Missouri,* Feb. 1, 1871. [$50.

"The County of Cass acknowledges itself to owe and promises to pay to the bearer fifty dollars, on the first day of August, 1873, at the National Park Bank, in the city and State of New York, being semi-annual interest on bond No. 66.

"C. H. DORE,
"*Clerk of Cass County Court, Missouri.*"

The Tebo and Neosho Railroad Company mentioned in the bond was incorporated Jan. 16, 1860, by an act of the General

Assembly of Missouri (Acts of Mo., 1860, p. 402), the eighth section of which reads as follows: "The 8th, 9th, 10th, 11th, 12th, 13th, 14th, 15th, 16th, 17th, 18th, 19th, 20th, 21st, and 22d sections of an act entitled 'An Act to incorporate the Osage Valley and Southern Kansas Railroad Company, approved Nov. 21, 1857,' are hereby re-enacted, and declared to be applicable to the company hereby incorporated; and all powers therein contained are extended to the Missouri, Tebo, and Neosho Railroad Company." The charter of said Osage Valley, &c., Railroad Company is set forth in the acts of that State for 1857, p. 50, and its fourteenth section provides that "it shall be lawful for the county court of any county in which any part of the route of said railroad or its branches may be, or any county adjacent thereto, to subscribe to the stock of the company; and, for the stock subscribed in behalf of the county, may issue the bonds of the county to raise the funds to pay the same." The act of incorporation authorizes the company to construct a road between certain points, and "to extend branch railroads into and through any counties that the directors may deem advisable."

The fourteenth section of the eleventh article of the Constitution of Missouri, adopted in 1865, declares that "the General Assembly shall not authorize any county, city, or town to become a stockholder in, or to loan its credit to, any company, association, or corporation, unless two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held therein, shall assent thereto."

The act of March 21, 1868, recited in said bonds in connection with the act of Jan. 16, 1860, as the authority for issuing them, is set forth in the case of *County of Henry* v. *Nicolay*, 95 U. S. 619.

Proceeding under its charter and the provisions of the branch railroad act, the directory of the Tebo and Neosho Railroad Company adopted, on the 6th of June, 1870, a resolution establishing a branch, to be known as the "Clinton and Kansas City Branch," designating its point of intersection with the main line and its general course. A copy of it was filed with the Secretary of State. At the same time, a committee was

appointed to take charge of the construction of the branch, and authorized to solicit subscriptions in the name of the company to the use of the branch.

On the 11th of October, 1870, the Tebo and Neosho Railroad Company entered into a contract with the Missouri, Kansas, and Texas Railway Company, organized and doing business under the laws of the State of Kansas, by the terms of which the former company sells and conveys to the latter "all its privileges, rights, powers, franchises, real estate, and other property, the whole or a part of which is in this State, excepting only such as belong to the extension of the Tebo and Neosho line, north from Sedalia *via* Boonville," &c., " and doth consent to a merger of the same with the franchises, property, and rights of said party of the second part; and the said Missouri, Kansas, and Texas Railway Company, party of the second part, shall have, exercise, and enjoy all the rights, powers, privileges, and immunities of the original charter of the Tebo and Neosho Railroad Company, and of the several amendments thereto, in the same manner and to the same extent as has heretofore been exercised and enjoyed by the said party of the first part, or by the several shareholders in said company, whose stock shall be exchanged as herein provided, either or both; and the said party of the second part does hereby accept the terms and conditions of the within instrument." The contract was filed and recorded in the office of the Secretary of State on the 4th of January, 1871.

On the 28th of February, 1871, upon the application of the committee appointed by the resolution of June 6, 1870, the county court of Cass County, by an order of record, subscribed for "three thousand shares of the capital stock of the Tebo and Neosho Railroad Company (now in part the Missouri, Kansas, and Texas Railway Company), in the name of and for the use and benefit of the Clinton and Kansas City Branch of the Tebo and Neosho Railroad, and to aid in the construction thereof, each share being of the denomination of $100, and amounting in the aggregate to the sum of $300,000," &c.

The remaining facts are set forth in the opinion of the court.

The case was tried by the court, which made a special finding of the facts. A judgment was rendered for the plaintiff below, and the county then sued out this writ.

The following are the errors assigned:—

1. The charter of the Tebo and Neosho Railroad Company did not authorize the county court of Cass County to issue the bonds in question, in the absence of the assent of two-thirds of the qualified voters of said county, and the court below erred in holding that such power existed.

2. The act of the Missouri legislature of Jan. 14, 1860, required as a condition precedent to the subscribing of stock to a railroad company, and the issue of bonds to pay therefor, that an election should be held in the county to test the sense of the tax-payers of the county, on the question of making the subscription and issuing the bonds, and the court erred in holding otherwise.

3. Said company, at the time of the subscription by Cass County to the stock of the branch road, had sold all its interest in and control over the alleged branch road, and had no authority to receive subscriptions of stock for such branch road, or to contract for the issue of bonds on account of such subscription, nor could the branch road receive such subscriptions or make such contract; and the court erred in holding otherwise.

4. The county court had no authority to issue the bonds in question, because, by the judgment of a court of competent jurisdiction, they have been restrained from issuing said bonds; and the court below erred in holding otherwise.

5. It does not appear from the finding of the facts by the court that the county court of Cass County made any valid contract with said company, or any other person or company, for the issue of stock to said county, nor that there was, in fact, any valid subscription by said county court to the stock of any company; and the court therefore erred in rendering judgment for the plaintiff below, on the special finding of facts.

The case was argued by *Mr. James O. Broadhead* for the plaintiff in error, and by *Mr. Thomas K. Skinker* for the defendant in error.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This case is almost precisely similar to that of *County of Henry* v. *Nicolay* (95 U. S. 619), the authority for issuing the bonds being claimed under the same charter (that of the Tebo and Neosho Railroad Company), and being pursued under the same general act of March 21, 1868, as in that case; and the same defence (amongst others) being set up, to wit, that the subscription to the capital stock of the company was made and the bonds were issued by the act of the county court alone, without a vote of the people, as required by the Constitution of 1865. This is the ground relied on in the first assignment of error.

The only material difference between the present case and that of Henry County, in reference to the point in question, arises from the circumstance that in this case the order of the county court for making the subscription was not adopted until after the assignment by the Tebo and Neosho Railroad Company of a portion of its franchises to the Missouri, Kansas, and Texas Railway Company; whilst in the Henry County case the order for a subscription was prior in date to the said assignment. But we do not regard this difference as material. In both cases, the branch railroad was authorized to be constructed by a resolution of the board of directors of the Tebo and Neosho Railroad Company before the assignment, and a committee was appointed to take charge of its construction and solicit subscriptions therefor; and in both cases the bonds of the county were issued after the said assignment. The authority of the Tebo and Neosho Railroad Company to establish independent branches under its charter, and pursuant to the provisions of the act of March 21, 1868, entitled "An Act to aid in the building of branch railroads in the State of Missouri," was considered in the Henry County case, and need not be again discussed. The resolution for establishing the branch road, to aid which the bonds now in question were given, was adopted on the 6th of June, 1870, and was as follows : —

"*Resolved,* by the board of directors of the Tebo and Neosho Railroad Company, that it is the desire of this company to build a branch railroad from a point on the main line of the road of said

company, at or near the town of Clinton, Henry County, north-westwardly in the general direction of Kansas City, to a point either on the Pacific Railroad easterly of said city, or to a point at said city on the line of road lately known as the Cameron and Kansas City Railroad, said branch railroad to be designated and known as the Clinton and Kansas City Branch of the Tebo and Neosho Railroad, and that the same is designated and estab-lished under the provisions of the charter of this company and the act of the General Assembly of Missouri, entitled 'An Act to aid in the building of branch railroads in the State of Missouri,' approved," &c.

The findings also show that the Tebo and Neosho Rail-road Company authorized a committee to take charge of the construction of said branch road, and to use the name of the company, and to solicit subscriptions in its name to the use of said branch. As far, therefore, as depended upon the Tebo and Neosho Railroad Company proper, its powers were exerted, before the assignment of its franchises, in the establishment and organization of the branch road. The branch being thus organized and set in operation, became invested with the powers and privileges conferred by the charter of the company, to enable it to lay out and construct its road, and to procure the requisite means of accomplishing these objects; and the counties through which it was located thereupon became authorized to subscribe stock in aid of its construction. These powers, having thus been brought into existence, were not extinguished by the subsequent partial assignment of its franchises by the parent company to the Missouri, Kansas, and Texas Railway Company. Whether the application to the county for aid was made before or after said assignment could make no difference. As stated in the Henry County case, the Tebo and Neosho Railroad Company still continued in exist-ence, invested with a large portion of its franchises.

The county of Cass thus having the power to subscribe capital stock in aid of the branch road, the county court, on application made to it for that purpose, on the 28th of Febru-ary, 1871, did order and adjudge "that the county of Cass do subscribe for and agree to take three thousand shares of the capital stock of the Tebo and Neosho Railroad Company (now

in part the Missouri, Kansas, and Texas Railway Company), in the name of and for the use and benefit of the Clinton and Kansas City Branch of the Tebo and Neosho Railroad, and to aid in the construction thereof, each share being of the denomination of $100, and amounting in the aggregate to the sum of $300,000, under and by virtue of the authority in the charter of the Tebo and Neosho Railroad Company contained, and under the act of the General Assembly of the State of Missouri, entitled ' An Act to aid the building · of branch railroads in the State of Missouri,' approved March 21, 1868, and in accordance with the resolutions and orders of the board of directors of said Tebo and Neosho Railroad Company establishing said branch railroad and authorizing subscriptions to said capital stock to aid in the construction thereof, adopted on the sixth day of June, 1870 ; the said stock to be paid for by the issue and delivery to the committee appointed to construct said branch railroad, or to their successors in office, of the coupon bonds of the county of Cass of the denomination of $1,000 each, bearing date the first day of February, 1871, with interest at the rate of ten per cent per annum, payable semi-annually," &c.

The order then prescribed certain conditions as to the time and circumstances under which the bonds were to be delivered, which are not relevant to the point under consideration.

In pursuance of this order, the bonds were signed by the officers of the county, and were issued in August, 1871 ; and the court finds that the plaintiff is an innocent holder for value of the coupons sued on.

We think that the case is entirely within the decision in *County of Henry* v. *Nicolay* (*supra*), and that the constitutional provision does not apply to it.

But the defendant, in its second assignment of error, relies on the act of the Missouri legislature passed Jan. 14, 1860, which required as a condition precedent to the subscription of stock to a railroad company, and the issue of bonds to pay therefor, that an election should be held in the county to test the sense of the tax-payers on the question of subscription.

The same objection was raised in *County of Schuyler* v. *Thomas* (98 U. S. 169), and we overruled it on the author-

ity of *Smith* v. *The County of Clark*, 54 Mo. 58. We see no reason to change that opinion. The act of 1860 was an amendment to the general railroad law, and is held not to apply to companies having special charters, in which special power is given to counties and townships to subscribe stock in aid thereof.

The third assignment of error relates to the supposed effect of the assignment by the Tebo and Neosho Railroad Company of its franchises to the Missouri, Kansas, and Texas Railway Company, which has already been sufficiently discussed.

The fourth assignment is based on the fact that the bonds were issued pending and in violation of an injunction of the Circuit Court of the county of Cass, directed to the justices of the county court; and it is argued that this was notice to all the world of the objections to the regularity and valid-ity of the bonds. It seems that the bonds were in the keeping of the National Park Bank of the city of New York, which was not made a party to the injunction suit. It also appears by certain proceedings of the county court of Cass County, had on the twenty-fifth day of September, 1871, and set forth in the findings of fact, that the bonds were delivered to the con-struction committee of the branch railroad; but under what circumstances they were delivered is not shown. The coupons subsequently came into the hands of the plaintiff as an inno-cent purchaser for value. The question of *lis pendens* as ap-plicable to negotiable securities was fully considered by us in the case of *County of Warren* v. *Marcy* (97 U. S. 107), and we there held that a *bona fide* purchaser before maturity is not affected with constructive notice of a suit respecting such paper. That decision applies to the present case, and the objection cannot prevail to invalidate the plaintiff's title.

To the fifth and last assignment of error it may be answered, that it does appear that the county court on behalf of the county made an order to subscribe to the capital stock of the Tebo and Neosho Railroad Company for the use of the Clinton and Kansas City branch; that it dealt with the construction committee of the branch road, and that the bonds in question were issued to the said committee in payment of said stock. That this was a transaction which entitled the county to the

amount of stock subscribed cannot be doubted. An actual manual subscription on the books of the company was not necessary to entitle the county to the stock, or to bind it as a subscriber thereto. In *County of Moultrie* v. *Rockingham Ten Cent Savings Bank* (92 U. S. 631), where the board of supervisors of the county ordered that a subscription to the stock of a railroad company be made by the county, and that bonds should be issued in payment thereof; and the order was recorded in the minutes of the board, and bonds were actually issued to the railroad company in pursuance thereof, though no subscription to the stock was actually made on the books of the company, — we held that, whether the action of the board was in substance and legal effect a subscription, or only an undertaking to subscribe, accepted by the company, a valid contract existed between the county and the company. The committee of construction in the present case represented the branch railroad as a separate interest from that of the parent company, and the acts of the committee were, as to the branch, the acts of the company which the latter could not control or gainsay. The stock subscribed, or agreed to be subscribed, for the use of the branch, was separate stock, not under the control of the parent company, but under the control of the committee. As the dealings of the county court were with the committee, though the name of the company was used, the transaction was complete without any confirmatory action of the company, and the county was entitled to its stock whether certificates therefor were actually issued or not. We think that this assignment of error cannot be sustained.

*Judgment affirmed.*

MR. JUSTICE HARLAN dissented.