## JOHN S. MILLER ET AL.
## v.
## HILL P. WILSON.

37 399
68 557
37 399
168s 59

*Contracts—Subscription to Railroad Stock by County—Services in Influencing Election—Instructions.*

1. Where an obligation to pay money is dependent upon the act of a third person, such act is a condition precedent.

2. In an action to recover upon a written contract touching the obtaining by plaintiff of the subscription of a county for stock of a projected rail-

road, this court holds, in view of the evidence, that the verdict for the plaintiff can not stand.

[Opinion filed December 11, 1890.]

Appeal from the Superior Court of Cook County; the Hon. Elliott Anthony, Judge, presiding.

Mr. W. W. Gurley, for appellants.

Messrs. Cratty Bros. & Ashcraft, for appellee.

Gary, J. The evidence in this record presents a strong temptation to describe the breezy way they have in Kansas of conducting a campaign before an election, but it must be resisted.

The appellee, for money expended by him, sues the appellants upon an agreement between them, in which he is the party of the second part, and they of the first, as follows:

" That upon and in consideration of the faithful performance by the party of the second part of the agreement hereinafter contained, on the part of the said party of the second part, and in case the proposition which has been contemplated and prepared, namely, that the county of Ellis, in the State of Kansas, shall on certain terms subscribe for $150,000 of the capital stock of the Kansas, Texas & Southwestern Railway, and issue its bonds therefor for the amount aforesaid to the said railway company or its assigns or order, shall be duly carried at an election duly called and held therefor, and said proposition shall be duly carried out on the part of said county, and said bonds issued and delivered in accordance therewith, it is agreed by and on the part of the said party of the first part that $15,000 of said bonds shall be delivered to and shall belong to said party of the second part, as and for his full compensation and returns for providing the services and outlays and disbursements hereinafter mentioned. And in case such proposition is so carried at such election and carried out by and on the part of said county, and in case there should be any failure on the part of said railway company to fulfill the conditions of said proposition on its part to entitle

it to said bonds, said party of the first part will pay to said party of the second part all his aforesaid outlays of money. On the part of said party of the second part, it is agreed that he will cause to be made a thorough canvass and campaign to bring said proposition and the merits thereof fairly, fully and favorably before the voters of said county of Ellis, and will give his best legitimate services and aid thereto, and will secure, provide and use all necessary, legitimate and proper assistance, aids, arguments, articles, papers, documents and means for the purpose aforesaid, and will make, bear and pay all necessary and proper outlays and expenses for the purpose aforesaid, to the end that the proposition may be fully, fairly and favorably presented to the honest consideration and judgment of the voters of said county."

Statutes of Kansas, put in evidence, provide for an election such as is contemplated by the agreement, to vote for or against a " proposition " to be presented by a petition of taxpayers, such election to be called by the board of county commissioners, and that, " If a majority of the qualified elect ors voting at such election shall vote for such subscription * * * the Board of County Commissioners, for and on behalf of such county, * * * shall order the county * * * clerk to make such subscription * * * in the name of such county * * * and shall cause such bonds * * * as may be required by the terms of said proposition to be issued : * * * Provided, no such bonds shall be issued until the railroad * * * shall be completed * * * to such point * * * as may be specified in the proposition."

The evidence shows that the election was held, the proposition carried, and the appellee expended money in the campaign, but there is no evidence that the county commissioners ever ordered the clerk to make the subscription. To make this order was the duty of the county commissioners, on the result of the election being in favor of the proposition, without the intervention of anybody. Why it was not made does not appear. It is readily seen that the order and subscription might be very important to the appellants as a basis of credit

for means to build the road, although the bonds could not be issued until the road was completed. By the subscription the county would be bound to issue the bonds when the road was completed, but without the subscription the obligation of the county would not be perfect. Even if a mandamus would lie to compel performance by the county commissioners, such a remedy would be a very unsatisfactory security to go into the market with, to borrow money, or otherwise obtain credit upon.

Cases holding that where the order for subscription has been made, and the bonds issued, the bonds are valid though no subscription was formally made upon the books of the company, are not in point. Two such cases are cited by appellee. County of Cass v. Gillett, 100 U. S. 585; Nugent v. Putnam Co., 19 Wall. S. C. 241. By the agreement, no duty was imposed upon either of these parties to procure the action of the county commissioners under the statute.

That an obligation to pay money may be dependent upon the action of a third person, over whom neither party has any control, and that payment can not be exacted unless the specified act is performed, is familiar law, especially in insurance cases. It is elaborately discussed in Wooseley v. Wood, 6 Durn. & E. 710. The same principle has been often applied in this State in building contracts, and the like, to architects' and engineers' certificates, from Canal Tr. v. Lynch, 5 Gilm. 521, down to the present time. On the case shown by this record the appellee was not entitled to recover. On his behalf the court gave to the jury the following instructions :

"The court instructs the jury, that, while the words of the contract may require that the county shall subscribe for the capital stock of the railroad company, that it does not make it the duty of the plaintiff to obtain such subscription, and unless it appears, from the evidence, that the county refused to make such subscription, that fact alone, if it is a fact, would not defeat plaintiff's action.

"The real question is, did the plaintiff perform all that he agreed to perform in the contract, and if you believe, from the evidence, that plaintiff did perform and carry out all the obligations on his part, the recovery in this suit will not be affected by the default of the defendants, or of the county, if there was

any default on the part of said defendants or said county."

And for the appellants the following:

"1.   The jury are instructed that the plaintiff can not recover herein without proof that the subscription to the stock of the Kansas, Texas & Southwestern Railway Company, mentioned in the contract in evidence herein, has been, in fact, made on the part of the county of Ellis, in the State of Kansas."

And the jury, probably acting upon the presumption that the plaintiff would not have sued if he had not had a good cause of action, chose to follow the instructions favorable to him.

The judgment must be reversed and the cause remanded.

*Reversed and remanded.*